[Cite as *In re I.S.-S.*, 2021-Ohio-1720.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE I.S.-S., ET AL. | : | |
| Minor Children | : | No. 110143 |
| | : | |
| [Appeal by Mother, B.S.] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 20, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Court Division
Case Nos. AD-18913927, AD-18913928, AD-19912679, and AD-20906796

---

### *Appearances:*

Judith M. Kowalski, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Appellant B.S. ("Mother") appeals the juvenile court's termination of her parental rights of her minor children I.S.-S., P.S.-S., H.S., and L.B. ("the children") and the permanent award of custody to the Cuyahoga County Department

of Children and Family Services ("CCDCFS"). We affirm the judgment of the trial court.

{¶ 2} On March 10, 2020, CCDCFS filed a motion to modify temporary custody to permanent custody of I.S.-S., P.S.-S., and H.S., while the motion for permanent custody of L.B. was filed on August 11, 2020. On September 28, 2020, Mother filed a motion to grant legal custody of the children to her aunt, N.B. After the trial, the court granted CCDCFS's motion, and the children were placed in the permanent custody of CCDCFS.

## I. Facts and Procedural History

### A. Social Worker Testimony

{¶ 3} On November 8, 2018, I.S.-S. and P.S.-S. were adjudicated neglected and CCDCFS requested temporary custody. On October 2, 2019, H.S. was adjudicated dependent and temporary custody was requested by the agency. L.B. was adjudicated dependent, and the agency filed for permanent custody on August 11, 2020. CCDCFS worker, Tanya Spraggins ("Spraggins") received Mother's case in October 2019. Spraggins developed a case plan for Mother that included eradicating the domestic violence in Mother's life, getting professional help for Mother's mental health, substance-abuse counseling, obtaining permanent housing, and attending parenting classes. At the trial on October 30, 2020, Spraggins testified that Mother tested positive for marijuana, was diagnosed with posttraumatic stress disorder ("PTSD"), had a history of domestic violence, had

unstable housing, and had previously left two of her children with an inappropriate caregiver as the reason Mother's children came into the care of CCDCFS. (Tr. 13-14.)

**{¶ 4}** Spraggins testified that after the initial assessment, Mother tested positive for cocaine. Mother was recommended for intensive outpatient treatment through Recovery Resources, but did not complete the program. (Tr. 17-19.) In May 2020, CCDCFS received a referral stating that Mother gave birth to L.B. and tested positive for marijuana, cocaine, and amphetamines. However, CCDCFS was unable to verify the referral through medical records because Mother gave a false name at the time during the birth. Spraggins testified that Mother stated to her that she gave a false name because she did not want the agency to know she had given birth. (Tr. 20.)

**{¶ 5}** Additionally, Spraggins testified that Mother was engaged in her mental health services, but Spraggins still was concerned about Mother's mental health. Mother stated to Spraggins that she wanted L.B. to be adopted by N.B. so that the baby could stay with her siblings. Spraggins also testified that Mother has not been involved with any further domestic-violence altercations. Mother had also attended parenting classes but did not complete the program.

**{¶ 6}** Spraggins testified that Mother had secured an apartment and that the apartment was an appropriate place, but at the time of the trial, Spraggins had not visited Mother's home in seven months. Spraggins also testified that the

assumed father of the children lived in Miami and requested no further contact with CCDCFS.

{¶ 7} Spraggins stated at trial that she investigated whether there were family members that would be willing to care for the children. She contacted N.B., who was already caring for Mother's three older children.[1] However, Spraggins wanted to know if N.B. would be willing to care for the remaining four. N.B. stated that she would take custody of the children, however N.B.'s sister may have been interested in caring for H.S., but had yet to complete her fingerprints. Also, a week before the trial, N.B. shared with Spraggins that her brother was interested in caring for H.S. and L.B., but Spraggins had not yet followed up with him. N.B., who currently has legal custody of Mother's other three children not party to the proceeding, has a five-bedroom house with seven people living in the home. N.B. stated to Spraggins that if she was granted custody of P.S.-S. and I.S.-S., she would make more room for them by obtaining bunk beds.

{¶ 8} P.S.-S. And I.S.-S. are currently staying together in a foster home, and Spraggins testified that they both have a great relationship with their foster parents. (Tr. 31-32.) Spraggins stated that she has no concerns about their placement. H.S. and L.B. are placed together in another foster home. H.B. has been in the home for a year, and L.B. for five months. Spraggins testified that they are both thriving in their foster home. (Tr. 33.) Spraggins testified that granting CCDCFS permanent

---

[1] The three oldest children are not parties in the current action.

custody is in the best interest of the children at this time because Mother has yet to complete her case plan so that reunification can occur.  (Tr. 34.)

{¶ 9}  On cross-examination, Spraggins testified that Mother secured a three-bedroom apartment, has participated in visitations with the children prior to the COVID pandemic that caused the visitations to be suspended, and that Mother was having overnight visits with H.S.  Spraggins further testified that all of the children have a close relationship with N.B. and with each other.  However, Spraggins also testified that if permanent custody was granted to CCDCFS, there is not a guarantee that the children would ever see each other again.  (Tr. 43.)

## B.    Mother's Testimony

{¶ 10} After Spraggins's, testimony, Mother testified that she was aware of the case plan.  Mother attended two individual and two group sessions, but felt as if the sessions were unhelpful because the leaders of the sessions only spoke about their children and did not help her as an individual.  (Tr. 52.)  Mother testified that when she tried to ask questions about her situation, the group leaders would cut her off and steer it back to talking about their children.  Mother claimed that she shared her concerns with Spraggins.

{¶ 11} Mother also testified that she secured a therapist, and is engaged with her, but the sessions were not consistent because both Mother and the therapist would have to cancel for one reason or another.  (Tr. 53.)  However, Mother had a session with the therapist two weeks prior to the trial.  Mother completed her

domestic violence classes and had secured stable housing. Mother testified that she is currently in cosmetology school, but also earns money by "doing hair" in her home. (Tr. 55.) Mother testified that she secured a driver's license, and has car insurance.

{¶ 12} Mother expressed that her visitation with her children ended due to the pandemic, but she has spoken to her children on the phone. Mother also testified that she is concerned that her children will end up like her and her siblings because they did not grow up together and were estranged.

## C. N.B.'s Testimony

{¶ 13} N.B. testified that she is willing to take custody of all four of the children because they deserve to be together and have a relationship with each other. N.B. also testified that she secured a larger home to accommodate all of the children. She stated that she would put two bunk beds in the two bedrooms for the children, and put the crib in her room for L.B. N.B.'s son lives with her part-time along with her daughter who started the Ohio State University, but had to matriculate at home because of the pandemic. (Tr. 67.)

{¶ 14} N.B. testified that her relationship with the children is like mother's relationship to a child, and that it is natural for her to care for the children because she comes from a large family. N.B. also testified that it is difficult for the children to be separated because they have a close relationship. After their visits with one

another, the children become emotional because they do not want to leave each other.  (Tr. 68.)

{¶ 15} On cross-examination, N.B. testified that she has a total of eight children and 11 grandchildren, so she has a lot of experience with children. However, cross-examination could not continue because one of the attorneys was having a poor connection due to the trial taking place virtually.  The guardian ad litem ("GAL") for the children submitted her report to the court and recommended that CCDCFS's motion for permanent custody should be granted and would be in the best interest of the children.  The GAL's report cited the fact that Mother has not complied with her case plan, provided proof of employment, and at the time of the report, lacked a valid driver's license, despite Mother's use of a vehicle.

{¶ 16} At the end of the trial, the court awarded permanent custody of the children to CCDCFS, and stated, "it is further recommended that the child[ren] not be committed to the custody of the maternal great aunt as she is already the legal custodian of the child[ren]'s three older siblings, and the remaining four siblings, including this infant child, are all age 4 and under."  Journal entry Nos. 09141545796, 0914152641, 0914154564, and 0914152649 (Nov. 4, 2020).

{¶ 17} Mother has filed this timely appeal, assigning one error for our review:

> The Cuyahoga County Juvenile Court erred and abused its discretion in finding that clear and convincing evidence supported granting permanent custody of the subject children to CCDCFS.

## II.  Standard of Review

{¶ 18} To terminate parental rights and grant permanent custody to a county agency, the record must demonstrate by clear and convincing evidence the following: (1) the existence of one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e); and (2) permanent custody is in the best interest of the child. *In re S.H.*, 8th Dist. Cuyahoga Nos. 97992, 97993, and 97994, 2012-Ohio-4064, ¶ 27. "Clear and convincing evidence" is that quantum of evidence that instills in the trier of fact a firm belief or conviction as to the allegations sought to be established. *In re Y.V.*, 8th Dist. Cuyahoga No. 96061, 2011-Ohio-2409, ¶ 13, citing *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶ 19} When determining the child's best interest pursuant to R.C. 2151.414(D)(1), courts analyze the following factors: (1) the interaction and interrelationship of the child with others, (2) the wishes of the child, (3) the custodial history of the child, (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody, and (5) whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply.

{¶ 20} Also,

> [a] juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence "'if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence.'"

*In re G.W.*, 8th Dist. Cuyahoga No. 107512, 2019-Ohio-1533, ¶ 62, quoting *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16.

{¶ 21} The "best interest determination" focuses on the child, not the parent. R.C. 2151.414(C); *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994). The discretion that the juvenile court enjoys in deciding whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's decision will have on the lives of the parties concerned. *Id.* at 316.

{¶ 22} Thus, we review "a trial court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion." *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 52, citing *In re L.O.*, 8th Dist. Cuyahoga No. 101805, 2015-Ohio-1458, ¶ 22. "An abuse of discretion implies that the court's decision was unreasonable, arbitrary or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 23} R.C. 2151.353(A)(4) authorizes a trial court to grant permanent custody to an agency where a child has been adjudicated neglected, dependent, or abused. The trial court must determine by clear and convincing evidence that: (1) "the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent" pursuant to R.C. 2151.414(E); and (2) "permanent commitment is in the best interest of the child" pursuant to R.C. 2151.414(D)(1). R.C. 2151.353(A)(4).

## III. Law and Analysis

**{¶ 24}** The trial court has authority to grant permanent custody to CCDCFS where, as in this case, a child has been adjudicated as neglected, dependent, or abused.

> When an agency files a permanent custody motion under R.C. 2151.413 after obtaining temporary custody, the guidelines and procedure set forth under R.C. 2151.414 apply. Division (B) of R.C. 2151.414 sets forth a two-prong analysis to be applied by a juvenile court. Pursuant to this division, before a trial court can terminate parental rights and grant permanent custody to a county agency, the court must find by clear and convincing evidence (1) the existence of any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e), and (2) that granting permanent custody to the agency is in the best interest of the child.

*In re J.F.*, 2018-Ohio-96, 102 N.E.3d 1264, ¶ 45 (8th Dist.).

**{¶ 25}** "Only one of the four factors must be present for the first prong of the permanent custody analysis to be satisfied. Once the juvenile court ascertains that one of the four factors listed in R.C. 2151.414(B)(1) is present, then the court proceeds to an analysis of the child's best interest." *In re J.B.*, 8th Dist. Cuyahoga No. 98565, 2013-Ohio-1705, ¶ 80-81. Regarding the first prong of the analysis, the trial court stated in its journal entries,

> The court finds that: the child is not abandoned or orphaned, but has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period. The child is abandoned by the father. There are relatives of the child who are able to take permanent custody.

Journal entry Nos. 0914152641, 0914154564, and 0914152649 (Nov. 4, 2020).

**{¶ 26}** In the journal entry regarding L.B., the trial court stated,

> The court finds that: the child is not abandoned or orphaned and has not been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period. The child is abandoned by the alleged father. There are relatives of the child who are able to permanent custody.

Journal entry No. 0914154576 (Nov. 4, 2020).

**{¶ 27}** Mother filed a motion to grant legal custody of the children to her aunt, N.B. N.B. testified that she wanted to take custody of the children. However, the issue facing the trial court at the permanent custody hearing was not whether the children should have been placed with N.B.; rather, the issue is whether the agency's motion for permanent custody should be granted. *See In re C.H.*, 8th Dist. Cuyahoga No. 103171, 2016-Ohio-26, ¶ 26. "While it may be preferential in custody actions that children be placed with an appropriate relative, *see* R.C. 2151.412(G), the preference applies only to case plans, not to custody determinations." *Id.*, citing *In re M.W.*, 8th Dist. Cuyahoga No. 96817, 2011-Ohio-6444, ¶ 26. "A juvenile court need not find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting an agency's motion for permanent custody." *Id.*, citing *In re B.D.*, 4th Dist. Ross No. 08CA3016, 2008-Ohio-6273, ¶ 29.

**{¶ 28}** In its journal entries, the trial court listed a number of reasons why permanent custody should be awarded to CCDCFS, in accordance with R.C. 2151.414(E)(1) and (4). The court stated,

Following the placement of the child[ren] outside of the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent(s) has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. Father has not been willing to participate in case plan services and objectives designed for reunification with the child.

The parent(s) have demonstrated a lack of commitment toward the child[ren] by failing to support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

Journal entry Nos. 09141545796, 0914152641, 0914154564, and 0914152649 (Nov. 4, 2020).

{¶ 29} We recognize that "a parent's right to raise a child is an essential and basic civil right." *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). And the permanent termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case." *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14. Also, "'termination of the rights of a birth parent is an alternative of last resort.'" *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21, quoting *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994), citing *In re Cunningham*, 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979).

{¶ 30} We do not agree with Mother that the trial court's determination to award permanent custody to CCDCFS is premature. However, we also recognize that a trial court's decision to grant permanent custody will not be reversed as being

against the manifest weight of the evidence "if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence." *In re A.P.,* 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16.

{¶ 31} The trial court stated in its journal entries that Mother failed continuously to remedy the conditions causing the child to be placed outside of the home. The case plan required Mother to eradicate the domestic violence in her life, attend mental health and substance-abuse counseling, obtain permanent housing, and attend parenting classes. Spraggins testified that Mother had not been involved with any domestic-violence disputes, she attended counseling for mental health and substance-abuse, she obtained permanent housing, and she attended parenting classes, although she did not complete the program.

{¶ 32} The trial court also stated that Mother failed to regularly support, visit, or communicate with the children. Spraggins testified that Mother participated in visitation with the children until the COVID pandemic, which caused the visits to be suspended. The record also demonstrates that Mother was inconsistent with her visitation with the children. At the time of trial, Spraggins was unable to reach Mother to establish a visitation schedule. Mother also expressed her desire for L.B. to be adopted by a family member because Mother had not bonded with L.B. or seen her since May 2020.

**{¶ 33}** The trial court also stated that Mother relies on others for child care while she lives a care free life. Mother testified that she travels out of state, for no more than a week, for employment. When she travels, she leaves the children in the care of N.B. Mother claimed that she traveled to "do hair" in Miami and neighboring states.

**{¶ 34}** The record reveals that the first prong of the two-part test was satisfied where the trial court found by clear and convincing evidence that in accordance with R.C. 2151.414(B)(1)(d), I.S.-S., P.S.-S., and H.S. have "been in the temporary custody of the Cuyahoga County Division of Children and Family Services which is for twelve (12) or more months of consecutive twenty-two (22) month period." Journal entry Nos. 0914152641, 0914154564, and 0914152649 (Nov. 4, 2020). The trial court also found by clear and convincing evidence that in accordance with R.C. 2151.353(A)(4), L.B. "has not been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period." Journal entry No. 0914154576 (Nov. 4, 2020).

**{¶ 35}** As the factfinder in this case, the trial court was in the best position to determine the credibility of the witnesses and observe their demeanor. As we recently stated:

> "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."

The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. * * *

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.["]

"A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal."

This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well. (Citations omitted.)

*In re I.S.*, 8th Dist. Cuyahoga No. 107472, 2019-Ohio-638, ¶ 68, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶ 36} As to the second prong of the analysis, once the juvenile court determines that one of the factors listed in R.C. 2151.414(B)(1) applies, then the court must determine, by clear and convincing evidence, whether permanent custody is in the best interest of the child. *In re E.C.*, 8th Dist. Cuyahoga No. 103968, 2016-Ohio-4870, ¶ 29. When determining the child's best interest pursuant to R.C. 2151.414(D)(1), courts analyze the following factors: (1) the interaction and interrelationship of the child with others, (2) the wishes of the child, (3) the custodial

history of the child, (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody, and (5) whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply.

{¶ 37} The trial court stated, in the journal entries:

> Upon considering the interaction and interrelationship of the child[ren] with the child[ren]'s parents, siblings, relatives, and foster parents; the age of the child; the custodial history of the child, including whether the child has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or months of a consecutive twenty-two month period; the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of a permanent custody; and, the report of the Guardian ad Litem, the Court finds by clear and convincing evidence that a grant of permanent custody is in the best interests of the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent; and it is further recommended that the child not be committed to the custody of the maternal great aunt as she is already the legal custodian of the child[ren]'s three older siblings, and the remaining four siblings, including this child are ages 4 and under.

Journal entry Nos. 09141545796, 0914152641, 0914154564, and 0914152649 (Nov. 4, 2020).

{¶ 38} Thus, after a thorough review of the record, we find that there is clear and convincing evidence supporting the determination to award permanent custody to CCDCFS, and that the trial court did not abuse its discretion by finding that the award is in the best interest of the children.

{¶ 39} Mother's sole assignment of error is overruled.

{¶ 40} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR