[Cite as *In re D.P.*, 2022-Ohio-135.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE D.P., JR. | : | |
| | : | No. 110729 |
| [Appeal by Father, D.P., Sr.] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 20, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-19-913326

***Appearances:***

Patrick S. Lavelle, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

ANITA LASTER MAYS, J.:

{¶ 1} Appellant D.P., Sr. ("Father") appeals the juvenile court's termination of his parental rights of his minor child D.P., Jr. ("the child") and the permanent award of custody to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). We affirm the judgment of the trial court.

**{¶ 2}** The child was originally placed into CCDCFS' custody after removal from his mother T.S. ("Mother") in 2016, and remained there until 2018, when he was returned to the custody of Father. In September 2019, Father was convicted of several crimes and was imprisoned for a year and a half. CCDCFS took custody of the child. Father was released from prison in March 2021, and contacted CCDCFS in April 2021, to regain custody of the child. The issue of custody went to trial on July 8, 2021, and the trial court awarded permanent custody of the child to CCDCFS.

## I. Facts and Procedural History

**{¶ 3}** Mother's custody of the child was terminated after indicating that she was not willing to participate in the case plan and did not want reunification with her children.[1] (Tr. 13.) Mother's case plan consisted of services to address her substance abuse, mental health, and housing issues. Mother has not visited the child nor did she appear at the July 8, 2021 trial.

### A. Social Worker's Testimony

**{¶ 4}** At the trial, Kera Korzekwa ("Korzekwa"), the social worker assigned to the case, testified that Father established paternity and the child came into custody in 2016 due to the agency's concerns about substance abuse, domestic violence, mental health, and lack of housing for the parents. (Tr. 11.) Korzekwa testified that the child was in CCDCFS's care for two years before he was released into the custody of Father. *Id.* However, Father was arrested in September 2019,

---

[1] Mother had two children that were older than the child committed to the permanent custody of CCDCFS and two children that were younger than the child committed to legal custody of their father.

and was incarcerated for a year and a half. (Tr. 12.) The child was returned to CCDCFS's custody. Father was release from incarceration in March 2021. Korzekwa testified that Father was given a case plan consisting of providing adequate housing, addressing his substance abuse and mental health issues, and attending parenting classes. (Tr. 14.)

{¶ 5} For Father's substance abuse and mental health issues, he was referred to Recovery Resources, where he stated that he completed his assessment. (Tr. 15.) However, since Father did not sign a medical release for Korzekwa, she was not able to verify the information with Recovery Resources. (Tr. 22.) Korzekwa testified that Father was residing with a cousin in a two-bedroom, one-bathroom home. Father showed Korzekwa an incomplete lease that Korzekwa had yet to get in touch with the landlord to confirm. (Tr. 16.) Because of COVID protocols, Father's visits with the child have been virtual. Father has attended every visit. (Tr. 17.) Korzekwa testified that Father is engaged with the child and does well with the child over the phone. *Id.*

{¶ 6} Korzekwa testified that the child is thriving in his current placement and the child shares an incredible bond with his foster mother. (Tr. 18.) The child, who has a life-threatening heart condition, is in physical, occupational, and speech therapy. According to Korzekwa, the foster mother has the child on a perfect schedule and the child is reacting well to it. (Tr. 18-19.) Korzekwa testified that she has spoken with Father about the child's special needs and how they change over

time.  (Tr. 20.)  Father told her that he can handle it, but she is not confident that he understands how many appointments are associated with the child's condition.  *Id.*

{¶ 7}  Korzekwa testified that CCDCFS wanted the trial court to grant permanent custody to the agency for the child because it is in his best interest to stay with his foster mother for stability.  *Id.*  Korzekwa continued by stating that the child's needs are being met consistently and he has made incredible progress.  (Tr. 21.)  The foster mother wants to adopt the child and is willing to allow Father to remain in his life.  *Id.*

**B. Guardian Ad Litem's Testimony**

{¶ 8}  Michael Holbrook ("Holbrook"), the guardian ad litem, gave his oral report in which he recommended that the court grant permanent custody of the child to CCDCFS.  Holbrook stated that it is clearly in the child's best interest that he remains with his current foster mother.  (Tr. 44.)  Holbrook also stated that the needs of the child are beyond basic and Father is not equipped to handle the extensive health concerns.  (Tr. 45.)  Additionally, Holbrook expressed concern that Father is still in the reentry phase, having been just recently released from prison.  *Id.*

{¶ 9}  Holbrook also expressed concern about the child being bitter about Father's absence from his life.  Holbrook does not want the child to grow up to resent Father for not being an active part of the child's life.  However, Holbrook is encouraged by the fact that the foster mother is very positive about facilitating visits between the child and Father.  (Tr. 46-47.)  Holbrook did express his frustration

with the agency in not doing more to ensure that the child and Father's relationship be preserved. He is concerned about the future relationship between the Father and the child.

### C. Trial Court's Decision

{¶ 10} At the end of trial, the trial court awarded permanent custody of the child to CCDCFS and stated in its journal entry,

> It is therefore ordered that the order made committing the child to the emergency temporary custody of CCDCFS is terminated. The child is committed to the permanent custody of CCDCFS for the purposes of adoption. The parental rights of mother and father are hereby terminated.

Journal entry No. 0914862344 (July 13, 2021).

{¶ 11} Father has filed this appeal, assigning three errors for our review:

I. The trial court's award of permanent custody to CCDCFS violated state law and appellant's right to due process of the law guaranteed by the Fourteenth Amendment of the United States Constitution and Section 16, Article 1 of the Ohio Constitution;

II. The trial court's decision to award permanent custody to CCDCFS was against the manifest weight of the evidence; and,

III. The trial court's failure to discuss the wishes of the child and his relationship with appellant in determining the best interests of the child constitutes reversible error.

## II. Standard of Review

{¶ 12} "To terminate parental rights and grant permanent custody to a county agency, the record must demonstrate by clear and convincing evidence the following: (1) the existence of one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e); and (2) permanent custody is in the best interest

of the child." *In re I.S.-S.*, 8th Dist. Cuyahoga No. 110143, 2021-Ohio-1720, ¶ 18. "'Clear and convincing evidence' is that quantum of evidence that instills in the trier of fact a firm belief or conviction as to the allegations sought to be established." *In re Y.V.*, 8th Dist. Cuyahoga No. 96061, 2011-Ohio-2409, ¶ 13, citing *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶ 13} R.C. 2151.353(A)(4) authorizes a trial court to grant permanent custody to an agency where a child has been adjudicated neglected, dependent, or abused. The trial court must determine by clear and convincing evidence that (1) "the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent" pursuant to R.C. 2151.414(E); and (2) "permanent commitment is in the best interest of the child" pursuant to R.C. 2151.414(D)(1). R.C. 2151.353(A)(4).

{¶ 14} When determining the child's best interest pursuant to R.C. 2151.414(D)(1), courts analyze the following factors: (1) the interaction and interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply.

{¶ 15} Also,

> [a] juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence "if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for

permanent custody had been established by clear and convincing evidence."

*In re G.W.*, 8th Dist. Cuyahoga No. 107512, 2019-Ohio-1533, ¶ 62, quoting *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16.

{¶ 16} The "best interest determination" focuses on the child, not the parent. R.C. 2151.414(C); *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994). "The discretion that the juvenile court enjoys in [deciding] whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's [decision] will have on the lives of the parties concerned." *Id.* at 316.

{¶ 17} Thus, we "review a trial court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion." *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 52, citing *In re L.O.*, 8th Dist. Cuyahoga No. 101805, 2015-Ohio-1458, ¶ 22. "An abuse of discretion implies that the court's decision was unreasonable, arbitrary or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

## III. Law and Analysis

{¶ 18} We will address all three assignments of error together for ease of discussion. The trial court has authority to grant permanent custody to CCDCFS where, as in this case, a child has been adjudicated as neglected, dependent, or abused.

When an agency files a permanent custody motion under R.C. 2151.413 after obtaining temporary custody, the guidelines and procedure set forth under R.C. 2151.414 apply. Division (B) of R.C. 2151.414 sets forth a two-prong analysis to be applied by a juvenile court. Pursuant to this division, before a trial court can terminate parental rights and grant permanent custody to a county agency, the court must find by clear and convincing evidence (1) the existence of any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e), and (2) that granting permanent custody to the agency is in the best interest of the child.

(Footnote omitted.) *In re J.F.*, 2018-Ohio-96, 102 N.E.3d 1264, ¶ 45 (8th Dist.).

{¶ 19} "R.C. 2151.414(B)(1) requires only one of the factors to exist to satisfy the first prong of the statute. Therefore, when a trial court makes a finding under R.C. 2151.414(B)(1)(d), and the record supports that finding, that is sufficient to satisfy the first prong of the permanent custody statute regardless of any other factor." *In re J.C-A.*, 8th Dist. Cuyahoga No. 109480, 2020-Ohio-5336, ¶ 83. Regarding the first prong of the analysis, the trial court stated in its journal entries,

The other significant factor is that this child is only five years old and has already been removed from his parents two times. And these have not been short removals. The first time he was in foster care, in AD16910884, emergency custody was granted on July 19, 2016. A motion for pre-dispositional custody to the father was denied at that time. He remained in foster care for two years, until the father was granted legal custody with protective supervision to CCDCFS on July 30, 2018. Protective supervision remained in place until January 15, 2019. The child was again placed in emergency custody on October 31, 2019, and he has been in custody since then. He has been in the foster care system for more time in his five years than he has been with his parents.

Journal entry No. 0914862344 (July 13, 2021).

{¶ 20} In its journal entry, the trial court also listed a number of reasons why permanent custody should be awarded to CCDCFS, in accordance with R.C. 2151.414(E)(1) and (4). The court stated:

> Pursuant to R.C. 2151.353(A)(4), the Court finds that the child cannot and should not be placed with either parent for the following reasons in accordance with Division (E) of Section 2151.414:
>
>> (E)(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>>
>> (E)(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

Journal entry No. 0914862344 (July 13, 2021).

{¶ 21} We recognize that "a parent's right to raise a child is an essential and basic civil right." *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). And the permanent termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case." *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14. Also, "'termination of the rights of a

birth parent is an alternative of last resort.'" *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21, quoting *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994), citing *In re Cunningham*, 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979).

{¶ 22} In Father's assignments of error, he argues that the trial court violated his due process rights, the trial court's decision was against the manifest weight of the evidence, and the trial court committed reversible error by not taking into account the child's wishes. Father argues that the trial court did not make a factual finding that CCDCFS made reasonable efforts to reunify Father with the child, thereby violating his due process rights and R.C. 2151.419(B)(1).

{¶ 23} R.C. 2151.419(B)(1) states,

A court that is required to make a determination as described in division (A)(1) or (2) of this section shall issue written findings of fact setting forth the reasons supporting its determination. If the court makes a written determination under division (A)(1) of this section, it shall briefly describe in the findings of fact the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from the child's home or enable the child to return safely home.

{¶ 24} In its journal entry, the trial court cites reasons as to why reunification between Father and the child was not possible. The trial court stated,

These two factors will be discussed together. The parents have failed to complete the case plan. The child was removed because the father was convicted of several crimes and sentenced to prison in September of 2019. *See* CCDCFS Exhibits 1 and 2 which were entered into evidence during the adjudication and are the certified journal entries of the sentences. The Court notes that sentences were consecutive to each other and Exhibit 2 states in part: "the defendant committed one

or more of the multiple offenses while the defendant was awaiting trial or sentencing or was under a community control or was under postrelease control for a prior offense." The father's criminal history is also discussed on page two of the written GAL report. The father was released from prison at the end of March of 2021, and in May, the father was referred to Recovery Resources for assessments for substance abuse and mental health. While the father stated to the social worker that he completed the assessments less than a week before the trial date, and the social worker has been unable to verify this report. Additionally, housing was on the case plan, but the lease provided to the social worker to did not have any terms and no signatures.

There was much testimony about the child's extensive medical needs. There was also testimony that the father was nonchalant about these special needs. Upon meeting the current social worker, the father agreed to obtain a vaccine for coronavirus so that he could safely visit the child in person without putting the child at risk. The father failed to obtain the vaccine, and visits were always virtual.

Journal entry No. 0914862344 (July 13, 2021).

{¶ 25} Additionally, Korzekwa testified that she visited Father's apartment that he shares with his cousin and could not verify that the lease was valid. Also, Korzekwa and Holbrook both testified that they were concerned that Father would not be able to remain consistent with the child's numerous medical appointments or medical needs. Father's argument does not take into account the best interest of the child. The "best interest determination" focuses on the child, not the parent. R.C. 2151.414(C); *In re Awkal*, 95 Ohio App.3d at 315, 642 N.E.2d 424 (8th Dist.1994).

{¶ 26} "'Although family unity is an important factor to consider, the paramount consideration is the best interest of the child.'" *In re N.R.*, 8th Dist.

Cuyahoga No. 110144, 2021-Ohio-1589, ¶ 32, quoting *In re E.M.B.T.*, 8th Dist. Cuyahoga No. 109479, 2020-Ohio-4308, ¶ 32. "As this court has repeatedly explained, "'[a] child's best interests require permanency and a safe and secure environment.'"" *Id.*, quoting *In re A.R.*, 8th Dist. Cuyahoga No. 103450, 2016-Ohio-1229, ¶ 22, quoting *In re Holyak*, 8th Dist. Cuyahoga No. 78890, 2001 Ohio App. LEXIS 3105 (July 12, 2001). Additionally, "[a]s this court has previously determined, a reasonable-efforts determination is not required at a permanent-custody hearing under R.C. 2151.353(A)(4) when the record demonstrates a reasonable-efforts determination was made earlier in the proceedings." *Id.* at ¶ 38, citing *In re A.R.*, 8th Dist. Cuyahoga No. 109482, 2020-Ohio-5005, ¶ 32.

{¶ 27} Father, however, did not demonstrate that a reasonable-efforts determination was not made earlier in the proceedings. "A parent's right to the custody of [his] child is a fundamental liberty interest protected by due process." *O'Malley v. O'Malley*, 8th Dist. Cuyahoga No. 98708, 2013-Ohio-5238, ¶ 15, citing *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *In re Adoption of Walters*, 112 Ohio St.3d 315, 2007-Ohio-7, 859 N.E.2d 545, ¶ 18. "The Due Process Clause of the Fifth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, provides: 'No person shall * * * be deprived of life, liberty, or property, without due process of law.'" *O'Malley* at ¶ 15. "Therefore, a court may not deprive a parent of her right to custody of her child without due process of law." *Id.*

**{¶ 28}** "Due process requires both notice and an opportunity to be heard." *Id.* at ¶ 16, citing *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶ 13.

> "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Thompkins* at ¶ 13, quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

**{¶ 29}** The record reveals that Father was provided notice of the hearing, which he attended. Father was also afforded the right to be heard at the hearing but left the hearing before its completion and, more importantly, before he exercised his right to be heard. Father had chosen not to testify, had informed his attorney, and then left the area on the day of trial. Therefore, we determine that Father's due process rights were not violated.

**{¶ 30}** Father further argues that the trial court's decision was against the manifest weight of the evidence. Specifically, Father contends that he was making progress on his case plan and that CCDCFS failed to verify his progression. Again, the court's decision to grant permanent custody "will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re T.B.*, 8th Dist. Cuyahoga No. 110130, 2021-Ohio-2448, ¶ 19, citing *In re Adoption of Lay*, 25 Ohio St.3d 41, 42, 495 N.E.2d 9 (1986). "Judgments supported by competent, credible

evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence." *Id.*, citing *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

{¶ 31} "The second requirement under R.C. 2151.353(A)(4) involves the juvenile court's best-interest determination in accordance with R.C. 2151.414(D)(1)." *In re N.R.*, 8th Dist. Cuyahoga No. 110144, 2021-Ohio-1589, at ¶ 31. In the trial court's journal entry, it stated:

> In considering the best interests of the child, the Court considered the following relevant factors pursuant to O.R.C. 2151.414(D)(1): (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, and foster parents; (the child is too young to express wishes); the custodial history of the child, including whether the child has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period; (3) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (4) whether any of the factors in Division (E) of Section 2151.414 apply in relation to the parents and child.

Journal entry No. 0914862344 (July 13, 2021).

{¶ 32} The trial court also stated:

> The other significant factor is that this child is only five years old and has already been removed from his parents two times. And these have not been short removals. The first time he was in foster care, in AD16910884, emergency custody was granted on July 19, 2016. A motion for pre-dispositional custody to the father was denied at that time. He remained in foster care for two years, until the father was granted legal custody with protective supervision to CCDCFS on July 30, 2018. Protective supervision remained in place until January 15, 2019. The child was again placed in emergency custody on October 31, 2019, and he has been in custody since then. He has

been in the foster care system for more time in his five years than he has been with his parents.

Journal entry No. 0914862344 (July 13, 2021).

{¶ 33} The trial court noted that the child had been in foster care longer than in his parents' care. Also, Father has not demonstrated that he was able to provide for the severe medical needs of the child. The trial court also noted that Father has not completed his case plan. The manifest weight of the evidence supports these findings, and we find that there was competent, credible evidence that the court's determination was not against the manifest weight of the evidence.

{¶ 34} Father further argues that the trial court failed to discuss the wishes of the child and his relationship with appellant in determining the best interests of the child. R.C. 2151.414(D) requires that in determining the best interest of the child, the court must consider all relevant factors, including but not limited to, (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 35} "There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958, 12 (Aug. 31, 2000).

{¶ 36} In its journal entry, the trial court noted that the child was too young to express his wishes, because he is only five years old. In a termination-of-parental-rights case, the act of making a specific finding as to a child's capabilities is not sufficient to satisfy the trial court's duty under R.C. 2151.414(D)(2). If the trial court cannot make a finding concerning the child's wishes as expressed by him, it must then make a finding about his wishes as expressed by the guardian ad litem through his opinion as to the child's best interests. *See, e.g.*, *In re Salsgiver*, 11th Dist. Geauga No. 2002-G-2477, 2003-Ohio-1206, ¶ 37.

{¶ 37} Holbrook testified that the child stated that he does not know Father. (Tr. 53.) Holbrook also testified that the child's foster mother confirmed negative feelings towards Father and that the child has blocked out memories he has of Father out of anger. (Tr. 55.) At the end of Holbrook's testimony, he recommended that granting permanent custody to CCDCFS was in the best interest of the child. (Tr. 56.)

{¶ 38} The trial court, in its journal entry, stated:

The Guardian Ad Litem for the child recommends that permanent custody is in the best interest of the child. The attorney for the child,

states that his client wishes to remain in his current placement and that there no conflict between the GAL's recommendation for permanent custody and the wishes of his client. Despite encouragement from his foster mother, the child does not engage with the father during the visitations. The child's wishes are a significant factor in this court's decision. The Court notes that the GAL for the child was very clear during the trial about his recommendation for permanent custody and did not recommend temporary custody (despite what was submitted in his written report filed in December of 2020).

Journal entry No. 0914862344 (July 13, 2021).

{¶ 39} Given Holbrook's testimony and the trial court's findings, we determine that Father has not demonstrated that the trial court erred and did not take into account the child's wishes.

{¶ 40} Therefore, Father's first, second, and third assignments of error are overruled.

{¶ 41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MICHELLE J. SHEEHAN, J., CONCURS;
MARY J. BOYLE, P.J., CONCURS IN JUDGMENT ONLY