[Cite as *In re C.H.*, 2016-Ohio-26.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103171**

# IN RE: C.H. AND B.C., JR.
# Minor Children

[Appeal By B.C., Father ]

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga Court of Common Pleas
Juvenile Division
Case Nos. AD-12-912210 and AD-12-912211

**BEFORE:** Jones, A.J., Kilbane, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** January 7, 2016

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

**FOR C.C.D.C.F.S.**

Adrienne M. Watson
Yvonne C. Billingsley
C.C.D.C.F.S.
3955 Euclid Avenue
Cleveland, Ohio 44115

**FOR GUARDIAN AD LITEM**

Suzanne H. Adrain-Piccorelli
255 Falmouth
Rocky River, Ohio 44116

**FOR K.H.**

K. H.
10622 Hampden Avenue
Cleveland, Ohio 44108

LARRY A. JONES, SR., A.J.:

**{¶1}** Father-appellant appeals from the judgment of the Cuyahoga County Juvenile Court granting Cuyahoga County Department of Children and Family Services' ("CCDCFS" ) motion for permanent custody of B.C., Jr. ("B.C.") and C.H. and denying legal custody to the paternal grandmother.   We affirm.

## Procedural History and Facts

**{¶2}** The appellant is the father of both children, and this appeal relates to the trial court's decision to grant permanent custody of the children to CCDCFS and denying father's motion for legal custody to the paternal grandmother.   Father does not argue that he should have been awarded custody of the children.   Mother has not appealed the trial court's ruling.

**{¶3}** CCDCFS's first involvement with the family was in 2011 when father and mother were involved with a domestic violence incident while the older child, B.C., was present.   In July 2012, the agency was contacted when C.H. tested positive for marijuana and experienced withdrawal from opiates at birth.   Mother also tested positive for marijuana and opiates at C.H.'s birth.   The agency filed a complaint alleging C.H. to be an abused and dependent child and B.C. a dependent child and requested a disposition of protective supervision to the agency.

**{¶4}** The agency attempted to place the children with family members, but none were able to provide care for the children, so they were placed with a foster family.   The agency amended the complaint to request temporary custody of the children.

{¶5} At the time the children were removed from their parents, the goal was reunification. To achieve this goal, the agency developed a case plan, which included objectives for the father to establish paternity and address concerns for domestic violence, substance abuse, mental health and resource management, and for mother to address concerns for substance abuse, mental health, domestic violence, and obtain stable housing and employment.

{¶6} The children were moved from the foster family to the home of their maternal aunt in September 2012. At this time, the paternal grandmother and a second maternal aunt expressed interest in caring for the children but the paternal grandmother eventually determined that she would prefer to assist the maternal aunt and not be the full-time caregiver.

{¶7} At the time of the agency's annual review meeting in July 2013, father had not made any progress on his case plan. The same month, after approximately ten months of caring for the children, the maternal aunt asked CCDCFS to remove the children from her home, stating that she lacked family support. The paternal grandmother declined to have the children placed in her home at this time, citing a need to complete parenting classes and obtain employment. The children were placed back into a foster home, where they remained up and through the permanent custody hearing.

{¶8} Also in July 2013, the agency moved for permanent custody, citing mother's mental health problems, specifically her schizophrenia, her unwillingness to engage in services, and the fact that she had two other children that were not in her care or custody.

As to father, the agency's motion stated that he had failed to establish paternity, had been diagnosed with bipolar disorder, and had not otherwise complied with the case plan. The motion also indicated that father had not consistently visited with the children while they were in agency custody and there were no suitable relatives available for placement.

{¶9} In January 2014, the children's guardian ad litem ("GAL") filed a motion for legal custody to the paternal grandmother and subsequently filed a GAL report with the court. In her report, the GAL stated that the children had previously been placed with the maternal aunt, but once the aunt realized the children's mother was not going to progress on the case plan, she asked for the children to be removed. The GAL also noted that the children had received excellent care in their foster home and the foster parents worked diligently to provide the boys with needed services. The GAL noted that the paternal grandmother wanted custody of the children, had completed foster parenting classes, and visited with the children. Finally, the GAL indicated that father was starting to be engaged with case plan services. In February 2014, father filed a motion for legal custody to the paternal grandmother.

{¶10} In September 2014, however, the GAL moved to withdraw her motion for legal custody to the paternal grandmother. In her motion, the GAL stated:

> The paternal grandmother desires legal custody to allow her son to maintain a bond with his children. Her home is sufficient and her son and daughter have visited with the children. Unfortunately the boys have many needs, B.C. is only now developing understandable speech and C.H. must still be monitored when he eats so he does not eat to the point of choking or being sick. C.H. has now spent more than half of his life in the foster home and the boys are significantly bonded to the foster family. When hurt or needing something, they go immediately to their foster mother. With this

being the third placement in B.C.'s young life I am very concerned about attachment disorder and the upheaval a fourth placement would entail.

{¶11} In January 2015, the court held a pretrial at which the parties discussed placement with the paternal grandmother. The case social worker stated that the paternal grandmother attended visitation but did not spend time with the children during the visits and had not bonded with C.H. To illustrate the problems the social worker saw, she told the court that the grandmother spent the visitation periods over-feeding the children, who had documented feeding issues, to the point where one child had vomited. The paternal grandmother would also order father around and tell him what to do with the children rather than interact with the children herself. The paternal grandmother also refused to change diapers, instead waiting for mother or father to arrive to do the job. According to the social worker, the paternal grandmother planned on having father care for the children once she obtained legal custody.

{¶12} The GAL told the court the children were thriving in their foster home, were engaged in activities, had made significant progress on their feeding issues, and B.C. had nearly corrected his speech problems.

{¶13} In March 2015, the court held a hearing on the agency's motion for permanent custody and on father's motion for legal custody to the paternal grandmother. Mother was not present at the hearing.

{¶14} Father's probation officer testified that father was placed on probation after his 2011 domestic violence conviction involving the children's mother. He violated his

probation, however, because he did not attend intensive outpatient drug treatment and a warrant had been issued for his arrest.

{¶15} The foster mother testified that the children were placed in her home in July 2013 and had made tremendous improvement. The boys were involved in community, preschool, library, and church-based programs. The agency had approached her and her husband about adopting the children and they agreed they would pursue adoption of the boys if the agency obtained permanent custody of them, but, if adopted, the boys would continue to have contact with their biological family. The foster mother indicated that she had communicated with the paternal grandmother in the past, but during those communications the paternal grandmother never asked how the children were doing.

{¶16} The social worker, Mary Blue ("Blue"), testified that neither parent had complied with the case plan and were not considered appropriate for placement. Mother continued to have a substance abuse problem and while she had sought treatment, she had never completed a treatment program. Blue testified that mother was compliant with the mental health portion of her case plan and was on medication. Mother moved around a lot, and at the time of the hearing, Blue did not know where mother was living.

{¶17} Blue testified that father had not completed any of his case plan goals. Father did not have stable housing, had not been compliant with domestic violence, mental health, or substance abuse treatment, was unemployed, and was in and out of jail.

{¶18} As to placement, the social worker testified that the children were placed with a maternal aunt until the aunt could no longer care for the children because the aunt

was not receiving family support and had her own children to care for. At the time the children moved out of the maternal aunt's home, CCDCFS investigated placement with the paternal grandmother but, according to the social worker, the "[paternal grandmother] felt the need to complete the parenting class. She needed to get some employment. She said she was overwhelmed, and she wanted to help her son with his kids, but she didn't really want to have them."

{¶19} Blue testified that the agency investigated the paternal grandmother for placement a second time but still did not believe that placement with the paternal grandmother would be in the best interest of the children because the paternal grandmother's intention was to allow the kids to remain with their father while she was their legal guardian:

> [B]ut she does not intend to raise the children. * * * She said that she will help him get his kids, but she is not gonna raise these kids. She has taken foster classes, but her intentions are not to adopt, but to get legal custody, and at some point hoping dad do get himself together so that she can sign the kids over to him to intervene from the agency getting permanent custody.

{¶20} Blue stated that the paternal grandmother has been twice offered placement of the children but "always backed out." Blue further testified that although the paternal grandmother came to visits and brought activities for the children, she was not physically involved with the children during the visits and "watched" the children far more then she

interacted with them. Of particular concern to the social worker was C.H., who needed physical touch to bond with his caregivers.

{¶21} The paternal grandmother testified that she wanted custody of the children since they were first taken by the agency but thought that the maternal aunt was the best caregiver for the children. She testified that she took classes to become a certified foster parent, participated in home visits with the social worker, and consistently visited with the children. She insisted that she would follow the agency's rules and not allow her son to have unsupervised access to the children if she was given legal custody of the children. She also disagreed with the social worker's opinion that she was not bonding with the children, insisting she had plenty of physical interaction with her grandsons during visits.

{¶22} The GAL gave her recommendation to the court, stating that the parents were unable to care for the children, who still had special needs and were thriving in their foster home, and she had concerns about removing the children from their current placement.

{¶23} The trial court granted permanent custody to the agency and denied father's motion for legal custody to the paternal grandmother.

{¶24} Father filed the instant appeal and assigns the following assignment of error for our review:

I. The trial court erred in finding that permanent custody rather than legal custody was in the best interest of the children.

**Law and Analysis**

**No preference in awarding custody to relatives**

{¶25} Father argues that the trial court erred in finding that the agency showed by clear and convincing evidence that no suitable relative was available for placement before granting permanent custody to CCDCFS. "'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *In re C.B.*, 8th Dist. Cuyahoga No. 92775, 2011-Ohio-5491, ¶ 28, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶26} But the issue facing the trial court at the permanent custody hearing was not whether the children should have been placed with the paternal grandmother; rather, the issue was whether the agency's motion for permanent custody should be granted. While it may be preferential in custody actions that children be *placed* with an appropriate relative, *see* R.C. 2151.412(G), the preference applies only to case plans, not to custody determinations. *In re M.W.*, 8th Dist. Cuyahoga No. 96817, 2011-Ohio-6444, ¶ 26, citing *In re B.D.*, 4th Dist. Ross No. 08CA3016, 2008-Ohio-6273, ¶ 30. A juvenile court need *not* find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting an agency's motion for permanent custody. *In re B.D.* at ¶ 29, citing *In the Matter of Keaton*, 4th Dist. Ross Nos. 04CA2785 and 04CA2788, 2004-Ohio-6210.

{¶27} We are reminded that relatives seeking custody of a child do not have the same rights as biological parents. *In Re M.W.* at ¶ 27, citing *In re Jaron Patterson*, 1st

Dist. Hamilton No. C-090311, 2010-Ohio-766, ¶ 16. No preference exists for family members, other than parents, in custody awards. *Id.* citing *id.*; *In re A.V.*, 10th Dist. Franklin No. 05AP-789, 2006-Ohio-3149, ¶ 14. Thus, the trial court was not required to give preferential consideration to father's request that the paternal grandmother be granted custody of the children.

**Permanent custody factors**

{¶28} A trial court's decisions with respect to child custody issues should generally be accorded the utmost respect, especially in view of the nature of the proceeding and the impact the court's determination will have on the parties' lives. *See generally Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). Absent an abuse of discretion, a reviewing court should affirm a trial court's judgment. Thus, a reviewing court will not overturn a trial court's custody or placement decision unless the trial court has acted in a manner that can be characterized as arbitrary, unreasonable, or capricious. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying an abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

{¶29} R.C. 2151.414 sets forth a two-part test that courts must apply when deciding whether to award permanent custody to a public services agency. The statute requires a court find, by clear and convincing evidence, that (1) granting permanent custody of the child to the agency is in the best interest of the child, and (2) either the

child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1).

{¶30} In this case, at the time of the dispositional hearing, it is undisputed that the children had been in agency custody for more than 12 months of a consecutive 22-month period. Thus, the second prong of R.C. 2151.414(B) was met and the court needed only to consider whether permanent custody was in the children's best interests. *See In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 44.

**Permanent custody was in children's best interests**

{¶31} After reviewing the transcripts and record, we find that the trial court's findings were supported by competent, credible evidence.

{¶32} In determining the best interests of a child, R.C. 2151.414(D)(1) directs the trial court to consider "all relevant factors, including, but not limited to":

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies

or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to CCDCFS;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section

apply in relation to the parents and child.

{¶33} The trial court found that factors R.C. 2151.414(D)(1)(a), (b), (c), and (d) were met. R.C. 2151.414(D)(1)(a) asks the court to consider the children's relationships with their caregivers. The record demonstrates that father loves his children, but he did not comply with his case plan and does not dispute that the children should not be placed with him. And, although the paternal grandmother insisted she had bonded with both children, the social worker testified that grandmother rarely physically interacted with the children and had not bonded with C.H.

{¶34} By contrast, the social worker testified that both boys had greatly benefitted from the foster parents' parenting and the children considered the foster parents their "mom" and "dad." Each boy had different special needs that were being addressed in the foster home and they were engaged in community services.

{¶35} R.C. 2151.414(D)(1)(b) asks the court to consider the child's wishes, as expressed directly by the children or through the children's guardian ad litem. The GAL stated that it would not be beneficial to the boys to remove them from their current placement and neither parent could presently or within a reasonable time care for the children.

**{¶36}** Under R.C. 2151.414(D)(1)(c), the court may consider the custodial history of the child, including whether the children had been in the temporary custody of one or more public services agencies for 12 or more months of a consecutive 22-month period. This factor is significant because it reflects the child's need for security, which comes from a safe and secure home. *In re D.S.*, 8th Dist. Cuyahoga No. 101906, 2015-Ohio-2042, ¶ 25. The social worker testified that the children had been in three different placements while in temporary custody because CCDCFS attempted to place the children with several different relatives, who were ultimately unable to obtain or maintain custody of the children. At the time of the dispositional hearing, the children had been in CCDCFS's custody for over two years; therefore, pursuant to R.C. 2151.415(D)(4), CCDCFS no longer qualified for any further extension of temporary custody. C.H. had been in agency custody since birth and the only stable home he had experienced was his foster home. The GAL testified that while B.C. was bonded with his biological family, he was also extremely bonded with C.H. and his foster family.

**{¶37}** Pursuant to R.C. 2151.414(D)(1)(d), the court may consider whether the need for permanency can be achieved without granting permanent custody. In this case, the court found that the children could not be placed with their parents within a reasonable time, and that CCDCFS exhausted all efforts to find a suitable home with a relative.

**{¶38}** In sum, although a trial court is required to consider each of the factors under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, this

court has noted that "[o]nly one of these factors needs to be resolved in favor of the award of permanent custody." *In re M.W.*, 8th Dist. Cuyahoga No. 96817, 2011-Ohio-6444 at ¶ 52, citing *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000). The trial court's determination was based on several of the best interests factors and those findings were supported by competent, credible evidence. Thus, on this record, we cannot say that the trial court abused its discretion when it found by clear and convincing evidence that granting permanent custody to CCDCFS was in the children's best interests.

**No abuse of discretion in denying motion for legal custody**

{¶39} Father argues that the trial court should have granted legal custody to the paternal grandmother instead of granting permanent custody to the agency. We disagree and find that the trial court did not abuse its discretion in denying father's motion.

{¶40} Although it is apparent that the paternal grandmother loves the children, the social worker testified that she had twice tried to place the children with the paternal grandmother but the paternal grandmother backed out each time. The social worker also had concerns about the paternal grandmother's inability or unwillingness to bond with C.H. The paternal grandmother spent visits with the children supervising them and the other adults who were interacting with the boys, as opposed to directly caring for the children. And, according to the social worker, the grandmother repeatedly made it known that although she was trying to get legal custody, she was going to permit the children's father to care for the children.

**{¶41}** The GAL, who initially filed a motion for legal custody to the paternal grandmother, later withdrew the motion, noting that the children had special needs and a change in placement would not be in their best interests.  At the permanent custody hearing, the GAL told the court that the children still had special needs, C.H. had spent two-thirds of his life in his current placement, the boys were "extraordinarily bonded" to one another, a change in placement would not be in the children's best interests, and the children could not presently or within a reasonable time period be placed with either parent.

**{¶42}** In light of the above, the trial court did not abuse its discretion when it denied father's motion for legal custody to the paternal grandmother.

**{¶43}** The sole assignment of error is overruled.

**{¶44}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

LARRY A. JONES, SR., ADMINISTRATIVE JUDGE

MARY EILEEN KILBANE, J., and

PATRICIA ANN BLACKMON, J., CONCUR