[Cite as *In re B.K.*, 2023-Ohio-1820.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| IN RE  B.K., ET AL. | : | |
| | | No. 112366 |
| Minor Children | : | |
| | | |
| [Appeal by J.K., Mother] | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  June 1, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD21907898 and AD21907899

---

*Appearances:*

Dawn Snyder, Attorney at Law, LLC, and Dawn Snyder,
*for appellant* Mother.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee* CCDCFS.

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Appellant mother appeals from a judgment of the juvenile court granting permanent custody of her children B.K., born in 2011, and J.K., born in September 2020, to the Cuyahoga County Department of Children and Family

Services (hereafter "the agency").  Mother argues the trial court erred in denying her motion for legal custody to be granted to a relative.  Our review indicates that the juvenile court properly engaged in the two-prong analysis set forth in R.C. 2151.414 and that clear and convincing evidence supports the court's decision granting permanent custody of the children to the agency.  We therefore affirm the trial court's decision.

**Substantive History and Procedural Background**

{¶ 2} On September 2, 2021, the children's father committed suicide by hanging himself in the hotel room where the family was staying after being evicted from the home of mother's mother (hereafter "maternal grandmother").  Soon after, on September 8, 2021, the agency was granted emergency custody of the children. The agency placed B.K. with the children's adult sibling and J.K. with mother's sister (hereafter "maternal aunt").

{¶ 3} Also on September 8, 2021, the agency filed a complaint for neglect and dependency and requested temporary custody of B.K. and J.K. to the children's adult sibling and maternal aunt, respectively.

{¶ 4} On March 7, 2022, the trial court held an adjudication hearing. Ladonna Wheeler, a supervisor in the agency's short-term service department, testified that the agency became involved after father committed suicide while he was caring for the children.  The family had been living in the hotel room since July 2021, and both father and mother suffered mental health and substance-abuse problems.  The agency was concerned with mother's mental health because she had

stated after father died that she wanted to kill herself and the children. Mother also reported that she suffered from severe anxiety and depression.

{¶ 5} The children's adult sibling, who was caring for B.K., testified that after mother and father were evicted from maternal grandmother's home, they lived in a hotel room in the summer of 2021; B.K. stayed with her but also spent time with his parents in the hotel. On the day father committed suicide, she went to the hotel to help. Mother left the hotel to purchase cocaine twice. On that day, the extended family convened in maternal aunt's house to discuss the placement of the children, but mother did not show up for the meeting.

{¶ 6} After the hearing, the children were adjudicated neglected and dependent and the court granted the agency's motion for temporary custody of B.K. and J.K. to their adult sibling and maternal aunt, respectively.

{¶ 7} On March 17, 2022, the court held a dispositional hearing. Lauren Hopkins, the social worker for the agency, testified that mother was referred to services to address her mental health, substance abuse, and housing issues. Mother was required to address her mental health issues: the agency learned that mother and father had a "murder-suicide" pact and they planned to kill the children and then commit suicide. Mother was also referred for a substance abuse assessment because J.K. tested positive for opiates and oxycodone when he was born. Mother never participated in any services, however. In addition, mother had not seen the children since October 2021 — she failed to appear for the first scheduled visit and cancelled the second visit and the social worker was unable to contact her afterward.

After the adjudication hearing, the court granted temporary custody of B.K. to the children's adult sibling and J.K. to maternal aunt.

{¶ 8} On April 20, 2022, the agency filed a motion to modify temporary custody to permanent custody. On September 13, 2022, the trial court held a hearing to determine whether the agency made reasonable efforts to assist mother. The agency's social worker testified that mother did not engage in the services for mental health, substance abuse, and parenting to which she was referred.

{¶ 9} On November 2, 2022, mother filed a motion for legal custody to the maternal grandmother, stating that the maternal grandmother was ready, willing, and able to provide for the children and meet their basic needs.

{¶ 10} On November 7, 2022, the trial court held an emergency custody hearing. The agency reported that it recently discovered the children's adult sibling, who had temporary custody of B.K. and had planned for his adoption, dropped off one of her own children at maternal grandmother's house, where mother was believed to be staying. The agency's social worker reported that mother had two outstanding warrants for her arrest and the agency considered maternal grandmother to be an unsuitable caregiver due to mother's presence in her house. Because of the incident, the agency now considered the children's adult sibling unsuitable as well and moved for the emergency custody of B.K.

{¶ 11} At the hearing, the GAL confirmed that B.K. did not wish to return to mother's care. The agency requested that B.K. be temporarily placed with the

maternal aunt, who has been caring for J.K.  The trial court granted the agency's motion.

**Permanent Custody Hearing**

{¶ 12} On December 13, 2022, the trial court held a permanent custody hearing.  Mother was incarcerated in Portage County Jail at the time and was transported for the hearing.  Lauren Hopkins, the social worker, testified for the agency, and maternal grandmother testified on behalf of mother.

### a.  Social Worker's Testimony

{¶ 13} The social worker testified that J.K. was doing well in maternal aunt's care; when he was first placed with her he was not walking or crawling, and now he was able to walk and speak.  Mother had not seen J.K. since October 2021 because mother failed to show up for scheduled visits.  Mother did not participate in the services for mental health and substance abuse.  In addition, she had three pending cases involving substance abuse:  in a 2022 Portage County common pleas case, she pleaded guilty to a fifth-degree felony drug possession offense; in a 2022 Stow Municipal Court case, she was charged with drug paraphernalia; and in another 2022 case in the same court she was charged with an offense of drug abuse.  For the Portage County case, mother submitted a journal entry from the court that stated the court accepted a plea of guilty to a fifth-degree felony drug-possession offense and that she was to be assessed for intervention in lieu of conviction.

{¶ 14} The agency had considered a placement of the children with maternal grandmother but found her home to be inappropriate.  The social worker went to

her house in July 2022 to assess its condition, but maternal grandmother did not let her into the house. The social worker was able to view the condition of the house the day before the permanent-custody hearing, and she found the house in disarray. She testified that the house was "filled with a lot of junk." She described the room B.K. would be staying in was "filled with stuff" and "you can't even walk in there." There was no bed for B.K. to sleep on in the room; the bed meant for him was in the living room, but it was cluttered with household items. As for the room for J.K., maternal grandmother did not open the door for the social worker to observe its condition because it was full of mother's possessions. Mother had been staying in the home but was serving a jail term for her drug offense at the time.

{¶ 15} The social worker reported maternal aunt is interested in adopting J.K. She is not interested in adopting B.K., however, but willing to continue to care for B.K. until another placement becomes available. Maternal aunt would like B.K. to be returned to the care of the children's adult sibling, but her suitability was being investigated by the agency after the incident where she sent her own son to be cared for by maternal grandmother when mother was present in the house.

{¶ 16} The social worker testified that she had observed B.K. and J.K. interact with each other and found them to be bonded. She stated that the agency expects them to visit each other even when they are not placed together, and she was certain that maternal aunt would not "give up" B.K. if he could not be returned to the children's adult sibling, but she acknowledged that she could not "guarantee" that the children would see each other when the agency is no longer involved in their

custody. She stated that if neither maternal aunt nor the adult sibling is interested in caring for B.K., the agency will consider placing him with the children's paternal grandmother.

### b. Maternal Grandmother's Testimony

{¶ 17} Maternal grandmother testified on mother's behalf. She admitted that she did not have a relationship with the children since their removal. She was not invited to the children's birthday parties, and when she gave gifts to J.K. for Christmas, maternal aunt discarded them.

{¶ 18} Maternal grandmother acknowledged that her home was not ready for the children yet, but it will be soon because her son would help her repair various areas in the house requiring repairs, which included a window, a back door, the bathroom door, and the bathroom floor. Her son, however, may be moving to Florida for work. She testified that if she was granted legal custody of the children, she would move the clutter in the house to storage and provide a place for the children to sleep. She would also make sure they attend school and transport them to doctor appointments when necessary. She testified that she would choose her grandchildren over her daughter if she has to choose between them and she would not let her daughter return to her house when she is out of jail.

{¶ 19} The guardian ad litem ("GAL") for the children recommended that the court grant the permanent custody of the children to the agency because it is in their best interest. After the hearing, the trial court granted the agency's motion for permanent custody. Mother now appeals from the judgment.

**Appeal**

{¶ 20} On appeal, mother raises one assignment of error for our review, arguing that the trial court erred because an award of permanent custody to the agency is not in the children's best interest and that the court should have granted mother's motion for legal custody to maternal grandmother.

### a. Standard of Review and the Two-Prong Permanent Custody Analysis

{¶ 21} We begin our analysis with the recognition that, while a parent's right to raise a child is an essential and basic civil right, *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), children have the right to "parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation." *In re Hitchcock*, 120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996).

{¶ 22} Under Ohio's permanent custody statute, R.C. 2151.414, the juvenile court's judgment granting permanent custody must be supported by clear and convincing evidence. Clear and convincing evidence has been defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. We will not

reverse a juvenile court's termination of parental rights and award of permanent custody to an agency unless the judgment is not supported by clear and convincing evidence. *See, e.g., In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 48; and *In re M.J.*, 8th Dist. Cuyahoga No. 100071, 2013-Ohio-5440, ¶ 24.

{¶ 23} R.C. 2151.414 sets forth a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. R.C. 2151.414(B). Under the statute, the juvenile court is authorized to grant permanent custody of a child to the agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the five factors under R.C. 2151.414(B)(1)(a) to (e) exists and, furthermore, permanent custody is in the best interest of the child under the factors enumerated in R.C. 2151.414(D)(1).

{¶ 24} Under the first prong of the permanent-custody analysis, the juvenile court is to determine if any of the following factors exists: whether the child is abandoned (R.C. 2151.414(B)(1)(b)); whether the child is orphaned and there are no relatives of the child who are able to take permanent custody (R.C. 2151.414(B)(1)(c)); whether the child has been in the temporary custody of public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period (R.C. 2151.414(B)(1)(d)); whether another child of the parent has been adjudicated as abused, neglected, or dependent on three separate occasions (R.C. 2151.414(B)(1)(e)); or, when none of these factors apply, whether "the child cannot be placed with either of the child's parents within a

reasonable time or should not be placed with the child's parents." (R.C. 2151.414(B)(1)(a)).

{¶ 25} If any of these five factors under R.C. 2151.414(B)(1) exists, the trial court proceeds to analyze the second prong — whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency. R.C. 2151.414(D)(1).

### b. First Prong: R.C. 2151.414(B)(1) Analysis

{¶ 26} Here, under the first prong of the permanent-custody analysis, the trial court found the presence of the R.C. 2151.414(B)(1)(a) factor — that B.K. and J.K. cannot be placed with mother within a reasonable time or should not be placed with mother.

{¶ 27} For this finding, R.C. 2151.414(E) enumerates 15 factors for the court to consider. In this case, the trial court found the presence of (E)(1), (E)(4), and (E)(10) factors. Pertinent to this appeal, R.C. 2151.414(E) states, in part:

> (E) In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the

court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]

* * *

(10) The parent has abandoned the child.

Pursuant to R.C. 2151.414(E), if the court determines, by clear and convincing evidence, that one or more of the (E)(1)-(15) factors exist, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *See e.g.*, *In re I.R.*, 8th Dist. Cuyahoga No. 110410, 2021-Ohio-3103, ¶ 69; *In re C.H.*, 8th Dist. Cuyahoga Nos. 82258 and 82852, 2003-Ohio-6854, ¶ 58.

{¶ 28} Here, in support of the 2151.414(B)(1)(a) finding that the children cannot be placed with the parent within a reasonable time or should not be placed with the parent, the trial court found that mother failed to remedy the concerns that prompted the removal of B.K. and J.K. despite reasonable efforts made by the agency; she demonstrated a lack of commitment toward the children by failing to support, visit, or communicate with the children; and she abandoned the children.

Our review reflects clear and convincing evidence relating to the (E)(1), (E)(4), and (E)(10) factors, and mother does not challenge these findings on appeal.

### c. Second Prong: Best Interest of the Child

{¶ 29} Once the juvenile court determines that one of the five factors listed in R.C. 2151.414(B)(1) is present, the court proceeds to an analysis of the child's best interest. The court undertakes this analysis with the recognition that although parents have a constitutionally protected interest in raising their children, that interest is not absolute and is always subject to the ultimate welfare of the child. *In re B.L.*, 10th Dist. Franklin No. 04AP-1108, 2005-Ohio-1151, ¶ 7; and *In re N.M.*, 8th Dist. Cuyahoga No. 106131, 2018-Ohio-1100.

{¶ 30} On appeal, mother argues that it is in the best interest of the children to be placed in the legal custody of maternal grandmother. Pursuant to R.C. 2151.353(A)(3), if a child is adjudicated an abused, neglected, or dependent child, the court may award the legal custody of the child to a parent or one who has filed a motion requesting legal custody of the child. While an award of permanent custody vests all parental rights in a public children services agency and divests the child's parents of all parental rights, including all residual rights, an award of legal custody does not divest parents of their residual parental rights. *In re K.C.*, 2017-Ohio-8383, 99 N.E.3d 1061, ¶ 7 (1st Dist.).

{¶ 31} "[T]he willingness of a relative to care for a child does not alter what the court must consider in determining permanent custody," and the court "is not required to favor a relative if, after considering all the factors, it is in the child's best

interest for the agency to be granted permanent custody." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 11. The issue to be resolved by the court at the permanent custody hearing was not whether B.K. and J.K. should be placed with maternal grandmother, but rather whether the agency's motion for permanent custody should be granted. *In re C.H.*, 8th Dist. Cuyahoga No. 103171, 2016-Ohio-26, ¶ 26. "A juvenile court need *not* find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting an agency's motion for permanent custody." (Emphasis sic.) *Id.*, citing *In re B.D.*, 4th Dist. Ross No. 08CA3016, 2008-Ohio-6273, ¶ 29. "[I]f permanent custody to the agency is in the children's best interest, legal custody to [a relative] necessarily is not." *M.S.* at ¶ 11, citing *In re L.C.*, 9th Dist. Summit No. 26816, 2013-Ohio-2799, ¶ 10. While it may be preferential in custody actions that children be placed with an appropriate relative, the preference applies only to case plans and not to custody determinations. *C.H.*, 2016-Ohio-26, at ¶ 26, citing R.C. 2151.412(G) and *In re M.W.*, 8th Dist. Cuyahoga No. 96817, 2011-Ohio-6444, ¶ 26.

{¶ 32} Here, the trial court found permanent custody to be in the children's best interest after its consideration of the factors enumerated in R.C. 2151.414(D). In determining the best interest of the child, R.C. 2151.414(D)(1) mandates that the juvenile court consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 33} When analyzing the best interest of the child, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56.

{¶ 34} The trial court here stated it found permanent custody to be in B.K.'s and J.K.'s best interest after its consideration of (1) the children's interaction and relationship with their parents, siblings, and relatives; (2) the children's wishes; (3) the children's custodial history; (4) the children's need for a legally secure permanent placement; and (5) the report of the GAL, who recommended permanent custody to the agency.

{¶ 35} Regarding the children's interaction and interrelationship with others, the record reflects that mother had not visited with the children despite the agency's efforts to facilitate visitations; mother had not seen the children since October 2021. Maternal grandmother had evicted the family from her home, and, as she acknowledged, she did not have a relationship with the children since their

removal due to a poor relationship with maternal aunt. These factors weigh in favor of permanent custody. Mother, citing R.C. 2151.411, argues that the trial court failed to consider the priority of placing the two children together, which would weigh in favor of legal custody to maternal grandmother. That statute, however, applies to the placement of the children *when they come into the custody of the agency*.[1]

{¶ 36} Regarding the children's wishes, the GAL confirmed that B.K. did not wish to return to mother. J.K., still an infant at the time of the trial, was too young to convey his wishes. Where a child is to too young to express his or her wish, it is proper for the juvenile court to consider the GAL's recommendation as part of the R.C. 2151.414(D)(1)(b) analysis. *In re R.A.*, 8th Dist. Cuyahoga No. 110541, 2021-Ohio-4126, ¶ 52. The children's GAL here recommended permanent custody to the agency.

{¶ 37} Regarding the children's custodial history, the record reflects J.K. was in the temporary custody of maternal aunt since March 22, 2022, and B.K. was in the temporary custody of the adult sibling between March and November 2022 and in the custody of the agency in the month preceding the permanent-custody hearing. Regarding the question of the child's need for a legally secure permanent placement

---

[1] R.C. 2151.411 states:

> Whenever a child *comes into the custody* of a public children services agency, * * * the agency is strongly encouraged to make reasonable efforts to place the siblings together * * *. If siblings are not placed together, the agency should make reasonable efforts to ensure the siblings maintain frequent connections through visitation or other ongoing interaction * * *.

(Emphasis added.)

and whether that type of placement can be achieved without a grant of permanent custody to the agency, mother does not challenge on appeal the trial court's finding that the children cannot be placed with her within a reasonable time or should not be placed with her. Mother instead argues the children should be placed in the legal custody of maternal grandmother. By her own testimony, however, maternal grandmother admitted her home was not ready for the children at the time of the hearing and, although she had plans for the necessary cleanup and for the repairs to be done by her son, there was no assurance that the repairs would be made. Furthermore, even though she testified she would choose her grandchildren over her daughter and would not permit her daughter to return to her residence, the credibility of the testimony is a matter for the trial court.

{¶ 38} Our review therefore reflects the trial court's decision granting permanent custody to the agency is supported by clear and convincing evidence contained in the record. In affirming the trial court's judgment granting permanent custody, we are mindful that "[i]n proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation cannot be conveyed to a reviewing court by printed record." *In re V.M.*, 4th Dist. Athens No. 18CA15, 2018-Ohio-4974, ¶ 62, citing *Trickey v. Trickey*, 158 Ohio St. 9, 106 N.E.2d 772 (1952). "'The discretion that the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given

the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *In re Ch. O.*, 8th Dist. Cuyahoga No. 84943, 2005-Ohio-1013, ¶ 29, quoting *In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.).

{¶ 39} For all the foregoing reasons, we find no merit to mother's sole assignment of error and affirm the trial court's judgment granting permanent custody to the agency.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
SEAN C. GALLAGHER, J., CONCUR