[Cite as *In re E.R.*, 2025-Ohio-1512.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | |
| | | No. 24AP-434 |
| [E.R., | : | (C.P.C. No. 20JU-9675) |
| B.R., | : | (REGULAR CALENDAR) |
| Appellant]. | : | |
| In the matter of: | : | |
| | | No. 24AP-435 |
| [A.R. et al., | : | (C.P.C. No. 20JU-9676) |
| B.R., | : | (REGULAR CALENDAR) |
| Appellant]. | : | |
| In the matter of: | : | |
| | | No. 24AP-438 |
| [J.R., | : | (C.P.C. No. 20JU-9674) |
| B.R., | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on April 29, 2025

**On brief:** *Emma M. Mirles-Jones*, for appellant.

**On brief:** *Robert J. McClaren*, for Franklin County Children Services.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

DINGUS, J.

{¶ 1} Appellant, B.R., mother of minors, E.R., A.R., M.R., and J.R. ("the children"), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic

Relations and Juvenile Branch, placing these children in the permanent custody of appellee, Franklin County Children Services ("FCCS"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2}  A.R. was born in September 2009, J.R. was born in July 2010, M.R. was born in August 2011, and E.R. was born in June 2013. On March 28, 2019, and after reports of child abuse, court proceedings were initiated concerning the children, and they were placed in the emergency custody of FCCS. The next day, temporary orders of custody were entered.

{¶ 3}  In April 2021, E.R. and J.R. were adjudicated to be abused, neglected, and dependent minors, and A.R. and M.R. were adjudicated to be dependent minors. The trial court terminated the temporary orders of custody, made the children wards of the court, and committed the children to the temporary custody of FCCS. In its temporary court commitment decisions, the trial court found that reasonable efforts had been made to prevent or eliminate the need for removal of the children from their home.

{¶ 4}  Soon thereafter, FCCS filed motions for permanent custody of the children. In September 2021, the children's maternal grandmother, B.H., requested to be added as a party to the case involving A.R. and M.R., and she moved for custody of these children. However, in July 2023, B.H. moved to withdraw these motions, noting that while she "continues to desire custody," she "does not wish to incur further legal fees or participate in litigation." (July 3, 2023 Mot. at 1.) FCCS's permanent custody motions eventually proceeded to trial in October 2023. At the trial, the FCCS caseworker assigned to the matter, Maggie Zych, and the guardian ad litem for the children, Stefanie Coe, testified. Additionally, mother testified, and B.H. was called to testify on behalf of mother. On the last day of the trial, the trial court filed an entry granting B.H.'s motion to withdraw her motions to add her as a party and for custody of A.R. and M.R.

{¶ 5}  In June 2024, the trial court issued a written decision, granting the motions and committing the children to the permanent custody of FCCS for the purpose of adoption. This decision included findings that FCCS made reasonable efforts to reunify the children with their parents, that the children had been in the temporary custody of FCCS for 12 or more months in a consecutive 22-month period, and that the granting of permanent custody is in their best interest.

{¶ 6}  Mother timely appeals.

## II. Assignments of Error

{¶ 7}   Mother assigns the following three assignments of error for our review:

[I.] The trial court erred and abused its discretion in [] finding that FCCS had made reasonable efforts to assist parents with their case plan when caseworker testified that she had been on the case for several years but had not ever reached out to the mother, father, maternal grandmother nor grandmother's husband in the entire time of the case.

[II.] The trial court erred and abused its discretion in admitting prejudicial exhibits into evidence purporting to be SACWIS records, but on the face appear to be altered and do not contain any of the usual identifying headers, footers, or report titles.

[III.] The trial court erred and abused its discretion in failing to address the objections to the dismissal of maternal grandmother's motions due to financial considerations and the detriment to mother's parental rights in contravention to In re: Santosky versus Kramer 455 U.S. 745.

## III. Discussion

{¶ 8}   Mother's first assignment of error contends the trial court erred in finding FCCS made reasonable efforts to assist the parents with their case plans.  Her second assignment of error alleges the trial court erred in admitting a certain document into evidence.  And, in her third assignment of error, mother asserts the trial court erred in not addressing her objections to the maternal grandmother's motions.  Generally, mother challenges the trial court's decision to award permanent custody of the children to FCCS.  These assignments of error are not well-taken.

{¶ 9}   For ease of discussion, we discuss mother's assignments of error in reverse order.  Her third assignment of error challenges the trial court's action concerning the motions filed by the maternal grandmother, B.H.  She generally argues the trial court did not comply with *Santosky v. Kramer*, 455 U.S. 745 (1982), which held that due process requires "fundamentally fair procedures" when a state "moves to destroy weakened familial bonds." *Id.* at 753-754.  We are unpersuaded.

{¶ 10} "Parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children." *In re H.D.*, 2014-Ohio-228, ¶ 10 (10th Dist.), citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000).  The Supreme Court of Ohio recognizes the

essential and basic rights of a parent to raise his or her child. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). However, these rights are not absolute, and a parent's natural rights are subject to the ultimate welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). In certain circumstances, therefore, the state may terminate the parental rights of natural parents when such termination is in the best interest of the child. *H.D.* at ¶ 10, citing *In re E.G.*, 2007-Ohio-3658, ¶ 8 (10th Dist.), citing *In re Harmon*, 2000 Ohio App. LEXIS 4550 (4th Dist. Sept. 25, 2000); *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist. 1994).

{¶ 11} In September 2021, B.H. moved for custody of A.R. and M.R. Later, in July 2023, she moved to withdraw that motion, despite continuing to "desire custody." (July 3, 2023 Mot. at 1.) On the final day of trial, over mother's objection, the trial court granted B.H.'s motion to withdraw her motions to be added as a party and for custody. In her testimony at trial, B.H. acknowledged that her husband had served prison time for sexual offenses involving a minor. Relatedly, the assigned FCCS caseworker, Zych, testified that B.H.'s home was not considered a viable placement for the children because of her husband's criminal history. Mother seems to argue that the timing of this ruling prejudiced her opposition to the granting of FCCS's request for permanent custody of the children. But in a permanent custody matter, a party " 'cannot raise issues on another's behalf, especially when that party could have appealed the issues appellant posits.' " *In re S.G.D.F.*, 2016-Ohio-7134, ¶ 14 (10th Dist.), quoting *In re D.T.*, 2008-Ohio-2287, ¶ 8 (10th Dist.). Considering the trial court's grant of B.H.'s request to withdraw her motions, mother's challenge to the trial court's ruling really seems to be directed at B.H.'s decision to withdraw her request for custody.

{¶ 12} And even if mother has standing to raise issues relating to B.H.'s motions, her argument is unavailing. A trial court is not required to consider placement with a relative before granting permanent custody. *In re J.C.*, 2010-Ohio-2422, ¶ 17 (10th Dist.). The issue to be resolved by the trial court at the permanent custody hearing was whether FCCS's motions for permanent custody should be granted, not whether the children should be placed with maternal grandmother. *In re B.K.*, 2023-Ohio-1820, ¶ 31 (8th Dist.). By implication, however, " '[i]f permanent custody to the agency is in the children's best interest, legal custody to [a relative] necessarily is not.' " *Id.*, quoting *In re M.S.*, 2015-Ohio-1028, ¶ 11 (8th Dist.). Therefore, in granting permanent custody of the children to FCCS, the trial court implicitly found that legal custody with B.H. is not in the children's best interest. Consequently, insofar

as mother supported B.H.'s effort to gain custody of A.R. and M.R., the trial court, by granting permanent custody, necessarily was unpersuaded that custody with B.H. was a suitable placement option. And, in fact, the evidence demonstrated that FCCS reasonably declined to even consider placement in B.H.'s home as a viable option, as B.H.'s husband had served prison time for sexual offenses involving a minor.

{¶ 13} For these reasons, mother's third assignment of error is overruled.

{¶ 14} We next address mother's second assignment of error, which challenges the trial court's admission of a certain document into evidence at the permanent custody hearing. She argues this document, "Exhibit 14," was presented in altered form, and therefore should have been excluded from consideration.

{¶ 15} The decision to admit or exclude relevant evidence rests within the sound discretion of the trial court. *Willis v. Road King Trucking, L.L.C.*, 2024-Ohio-5921, ¶ 19 (10th Dist.); *State v. Angus*, 2006-Ohio-4455, ¶ 16 (10th Dist.), citing *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. Absent a clear showing that the court abused its discretion in a manner that materially prejudices a party, a reviewing court will not disturb a ruling on the admission of evidence. *State v. Phelps*, 2015-Ohio-539, ¶ 27 (10th Dist.). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 16} Unless a recognized exception applies, hearsay is inadmissible. Evid.R. 802. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). A statement includes a "written assertion." Evid.R. 801(A). As pertinent here, Evid.R. 803(6) creates a hearsay exception for records kept in the ordinary course of business, and Evid.R. 803(8) creates a hearsay exception for public records and reports which set forth the activities of an agency or office and contain matters observed which, pursuant to a duty of law, the agency or office has a duty to report. *In re S.C-N.*, 2022-Ohio-3064, ¶ 89 (10th Dist.). These types of records are not admissible, however, if there is a "lack of trustworthiness." *See* Evid.R. 803(6) (does not apply if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness"); Evid.R. 803(8) (does not apply if "the sources of information or other circumstances indicate lack of trustworthiness"); *Sikora v. Gibbs*, 132 Ohio App.3d 770, 775 (10th Dist. 1999)

("Trustworthiness is the underlying rationale of the hearsay rule and its exceptions."). Further, "[u]nder either exception, a social worker's testimony concerning records kept by the [children services] agency, statements made by a parent, and reports taken during the course of the agency's investigation, are admissible because the contents of her file, including the reports against the family, had been compiled as part of the [children services] [a]gency's activities." *In re S.C-N.* at ¶ 89.

{¶ 17} The document at issue here is an Ohio Statewide Automated Child Welfare Information System ("SACWIS") placement log for the children, which contains the dates and locations of their placements since March 2019. No one objected to the use of this document during FCCS's case-in-chief. But, when FCCS's counsel later sought its admission into evidence, mother's counsel objected on the basis that it was not properly authenticated, and it had identifying information added, namely the children's names and the words, "Placement Chart," at the top of the document. (Ex. 14.) The trial court admitted the exhibit into evidence, over mother's objection. We find this was not an abuse of discretion.

{¶ 18} Mother argues that because the document was cropped to remove the usual identifying header, footer, and title for a SACWIS document, it was inadmissible. But this SACWIS record, in the form presented at trial, was properly authenticated, and nothing at trial demonstrated the existence of circumstances that would undermine its trustworthiness. FCCS caseworker Zych testified that this matter was transferred to her in June 2022. As part of her becoming familiar with the case, she reviewed the case history and activity logs on SACWIS. This included the SACWIS's placement history log for the children. She explained that the exhibit at issue is a "screenshot," or computer-captured image, of that placement history log. (Oct. 24, 2023 Tr. at 52.) Caseworker Zych, with the aid of the placement log, testified to the placement history for each child. While mother argues this document was improperly cropped to remove the header, footer, and original title, and information was added to the top of the document for this litigation (namely, the children's names and the title "Placement Chart"), she does not dispute it is a fair and accurate representation of what Zych purported it to be—an image of the placement history log captured from SACWIS. And mother does not allege the pertinent information contained therein, regarding the placement history of the children, was somehow altered from the original as it existed in SACWIS. Therefore, mother fails to demonstrate the trial court abused its discretion in admitting this exhibit into evidence.

{¶ 19} Accordingly, we overrule mother's second assignment of error.

{¶ 20} Lastly, we address mother's first assignment of error, which challenges the trial court's finding, in its decision granting permanent custody of the children to FCCS, that FCCS made reasonable efforts to assist the parents with their case plan. This assignment of error lacks merit.

{¶ 21} R.C. 2151.414(B) sets forth the circumstances under which a court may grant permanent custody of a child to a children services agency such as FCCS. In deciding to award permanent custody, the trial court must take a two-step approach. *In re K.L.*, 2013-Ohio-3499, ¶ 18 (10th Dist.). Pursuant to R.C. 2151.414(B)(1), the court, after a hearing, may grant permanent custody of a child to FCCS if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency and that any of the factors set forth in R.C. 2151.414(B)(1) apply. "Clear and convincing evidence is that degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the facts to be established." *K.L.* at ¶ 14. "It is more than a mere preponderance of the evidence but does not require proof beyond a reasonable doubt." *Id.* "[T]he findings of a trial court are presumed correct since, as the trier of fact, it is in the best position to weigh the evidence and evaluate the testimony." *In re C.C.*, 2005-Ohio-5163, ¶ 49 (10th Dist.).

{¶ 22} The factors that the trial court are to consider are described in R.C. 2151.414(B)(1). The first factor applies when "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)(1)(a). The second factor applies if the "child is abandoned." R.C. 2151.414(B)(1)(b). The third factor applies if the "child is orphaned, and there are no relatives of the child who are able to take permanent custody." R.C. 2151.414(B)(1)(c). And the fourth factor applies when "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period." R.C. 2151.414(B)(1)(d).

{¶ 23} Here, the trial court found the children cannot, or should not, be placed with either parent within a reasonable time, the parents had abandoned the children, and the children had been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period.

Mother does not dispute that the statutory factor in R.C. 2151.414(B)(1)(d) was established. As the trial court correctly found, the children had been in the temporary custody of FCCS since March 28, 2019. Therefore, it is uncontested that the first part of the two-part permanent custody test was established for all four children. Based on this circumstance, it is unnecessary for this court to review the applicability of the other factors set forth in R.C. 2151.414(B)(1). *See In re M.W.*, 2011-Ohio-6392, ¶ 36 (10th Dist.) ("because FCCS met the '12 of 22' requirement set forth in R.C. 2151.414(B)(1)(d), it was not necessary for the trial court to make further findings regarding whether the minor child cannot be placed with either parent within a reasonable time or should not be placed with either parent"); *In re C.K.*, 2020-Ohio-5437, ¶ 23 (5th Dist.) ("Once we conclude the record contains clear and convincing evidence supporting one basis for granting permanent custody [in R.C. 2151.414(B)(1)], review of the balance of the findings is unnecessary."); *In re I.G.*, 2014-Ohio-1136, ¶ 30 (3d Dist.) ("Pursuant to the plain language of R.C. 2151.414(B)(1)(d), when a child has been in an agency's temporary custody for twelve or more months of a consecutive twenty-two month period, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time.").

{¶ 24} Once a trial court determines that one of the circumstances in R.C. 2151.414(B)(1) applies, it must then determine whether the granting of permanent custody is in the child's best interest. *In re A.J.*, 2014-Ohio-2734, ¶ 16 (10th Dist.); R.C. 2151.414(B)(1). In determining the best interest of a child, the trial court must consider all relevant factors, including those specifically enumerated in R.C. 2151.414(D)(1). On appeal, we will not reverse a trial court's best interest finding in a permanent custody case unless it is against the manifest weight of the evidence. *In re I.R.*, 2005-Ohio-6622, ¶ 4 (10th Dist.), citing *In re Andy-Jones*, 2004-Ohio-3312, ¶ 28 (10th Dist.).

{¶ 25} Here, the trial court considered the factors relevant to the best interest of the children and concluded that granting permanent custody would be in each child's best interest. Mother does not challenge this finding as being against the manifest weight of the evidence. Instead, by her first assignment of error, she challenges the trial court's finding, in its decision granting permanent custody, that reasonable efforts had been made to prevent or eliminate the need for removal of the children from their own home. She argues this finding was contrary to the evidence.

{¶ 26} R.C. 2151.419(A)(1) provides that, at certain hearings, the juvenile court must determine whether a public children services agency "has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." This statute applies to "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *In re C.F.*, 2007-Ohio-1104, ¶ 41. Because this statute makes no reference to a hearing on a permanent custody motion, it does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414. *Id.*

{¶ 27} An agency may not, however, file a motion for permanent custody "[i]f reasonable efforts to return the child to the child's home are required under [R.C. 2151.419, and] the agency has not provided the services required by the case plan to the parents of the child or the child to ensure the safe return of the child to the child's home." R.C. 2151.413(D)(3)(b). Consequently, "[i]f the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *C.F.* at ¶ 43. *See In re N.M.*, 2021-Ohio-2080, ¶ 58 (10th Dist.) ("[T]he issue of whether the agency made reasonable efforts at reunification only arises at the hearing on a motion for permanent custody if the agency has not established that reasonable efforts were made prior to the hearing."). Conversely, if the trial court finds, prior to a permanent custody hearing, that the agency had made reasonable efforts to reunify the family during the child custody proceedings, it is unnecessary for the trial court to make a reasonable efforts finding in its permanent custody decision. *In re J.H.*, 2021-Ohio-807, ¶ 65 (10th Dist.).

{¶ 28} Prior to the permanent custody hearing in this matter, the trial court found FCCS had made the required reasonable efforts. On April 19, 2021, the trial court extended the children's placement in FCCS's temporary custody, finding, among other things, that reasonable efforts had been made to prevent or eliminate the need for removal of the children from their home. Because the trial court's April 19, 2021 judgments satisfied R.C. 2151.419(A)(1)'s reasonable efforts finding requirement, it was unnecessary for the trial court to make a reasonable efforts finding in the permanent custody decision.

{¶ 29} Despite being unnecessary for the purpose of granting permanent custody, the trial court made another reasonable efforts finding in its permanent custody decision. Mother's challenge to this finding in this appeal has no merit because " '[w]e cannot reverse a judgment based on an alleged error in a finding that the trial court never had to make in the first place.' " *In re Bil.I.*, 2023-Ohio-434, ¶ 30 (10th Dist.), quoting *J.H.* at ¶ 66. Further, mother could have challenged the earlier reasonable efforts finding by timely objection or appeal, but she did not. Therefore, mother's reasonable efforts finding argument fails. *See id.* ("Because appellants failed to object to or appeal the earlier reasonable efforts findings at the time they were made, they cannot challenge those findings now [on appeal].").

{¶ 30} For these reasons, mother's first assignment of error is overruled.

## IV. Disposition

{¶ 31} Having overruled mother's first, second, and third assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch.

*Judgment affirmed.*

DORRIAN and LELAND, JJ., concur.

_____